# Exhibit 1

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS,
COUNTY DEPARTMENT, CHANCERY DIVISION**

FILED
4/13/2020 3:49 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
9067743

| | |
|---|---|
| AMBASSADOR ANIMAL HOSPITAL, LTD., individually and as the representative of a class of similarly-situated persons, | ) ) ) ) |
| Plaintiff, | ) ) No. 2020CH03822 |
| v. | ) ) |
| HILL'S PET NUTRITION, INC, | ) ) |
| Defendant. | ) ) |

FILED DATE: 4/13/2020 3:49 PM   2020CH03822

## CLASS ACTION COMPLAINT

Plaintiff, Ambassador Animal Hospital, Ltd. ("Plaintiff"), brings this action on behalf of itself and all other persons similarly situated and, except as to those allegations pertaining to Plaintiff or its attorneys, which allegations are based upon personal knowledge except as stated otherwise, allege the following upon information and belief against defendant, Hill's Pet Nutrition, Inc. ("Hill's" or "Defendant"):

## PRELIMINARY STATEMENT

1.      On behalf of itself and the class, Plaintiff seeks statutory damages and other relief from Defendant's practice of sending unsolicited advertisements by facsimile.

2.      Defendant has sent advertisements by facsimile in an attempt to market or sell property, goods, or services.

FILED DATE: 4/13/2020 3:49 PM   2020CH03822

3.     The federal Telephone Consumer Protection Act, 47 USC § 227 (the "TCPA"), prohibits any person or entity from sending or having an agent send any "unsolicited advertisement" by facsimile ("junk faxes" or "unsolicited faxes").

4.     The TCPA mandates that if a person or entity sends an otherwise-unsolicited advertisement by facsimile to a fax recipient with which the sender has an "established business relationship," then the sender must include a specific, clear, and conspicuous opt-out notice on the first page of the advertisement. *See* 47 U.S.C. § 227 (b) (2) (D); and 47 C.F.R. § 64.1200 (a) (4) (iii).

5.     The TCPA provides a private right of action and provides minimum statutory damages of $500 per violation. If the Court finds the advertisements were sent knowingly or willfully, then the Court can increase the damages up to three times $500.

6.     Unsolicited faxes damage their recipients. An unsolicited fax wastes the recipient's valuable time that would have been spent on something else.  A junk fax interrupts the recipient's privacy. Unsolicited faxes tie up telephone lines, prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, use paper and ink toner for the sender's marketing purposes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message.

7.     On behalf of itself and all others similarly situated, Plaintiff brings this case as a class action asserting claims against Defendant under the TCPA and the common law of conversion.

FILED DATE: 4/13/2020 3:49 PM   2020CH03822

8.     Plaintiff seeks an award of statutory damages for each violation of the TCPA.

## PARTIES, JURISDICTION AND VENUE

9.     Plaintiff is an Illinois corporation with its principal place of business in Oak Park, Illinois.

10.     Defendant is a Delaware corporation with its principal place of business in Kansas.

11.     Jurisdiction is conferred by 735 ILCS 5/2-209 in that Defendant has transacted business in Illinois, and/or committed tortious acts in Illinois related to the matters complained of herein. Venue is proper in Cook County pursuant to 735 ILCS 5/2-101, *et seq.* because Defendant is not a resident of Illinois, and because some of the tortious acts complained of occurred in Cook County, Illinois. Specifically, some of the illegal faxing alleged herein took place in Cook County, Illinois.

## FACTS

12.     Defendant is a pet nutrition company.

13.     On information and belief, Defendant has sent thousands of advertisements in fax broadcasts to one or more lists of targeted recipients throughout the United States and throughout the class period alleged herein. Plaintiff received at least two of them, one in March 2018 and one in May 2018, true and correct copies of which are attached as Exhibit A.

14.     Exhibit A and other faxes sent by or on behalf of Defendant advertised property, goods, or services available for purchase from Defendant.

3

FILED DATE: 4/13/2020 3:49 PM   2020CH03822

15. Plaintiff is among the persons to whom Defendant sent advertisements by fax.

16. Plaintiff did not expressly invite or give permission to receive Defendant's advertisements by fax.

17. Defendant's faxes did not contain the opt-out notice required by the TCPA. *See, e.g.*, Exhibit A.

18. On information and belief, Defendant sent faxes to Plaintiff and more than 39 other recipients without their prior express permission or invitation, and without the opt-out notice required on faxes sent to persons with whom Defendant can demonstrate an "established business relationship." This allegation is based, in part, on the fact that Plaintiff never expressly invited or permitted anyone to send the subject fax advertisements to them, that the faxes attached as Exhibit A are generic, form faxes, that sending advertisements by fax is an inexpensive way to reach a wide audience, and that the faxes attached as Exhibit A have no opt-out notice.

## CLASS REPRESENTATION ALLEGATIONS

19. Plaintiff brings this action as a class action on behalf of itself and a class of all others similarly-situated as members of the class, and initially defined as follows:

> All persons sent at least one telephone facsimile message (a "fax"): (1) on or after April 13, 2016; (2) from or on behalf of Hill's; (3) advertising property, goods, or services of Hill's; (4) without the fax recipient's prior express invitation or permission; and (5) without the clear and conspicuous opt-out notice required by 47 C.F.R. § 64.1200 (a) (4) (iii).

4

FILED DATE: 4/13/2020 3:49 PM    2020CH03822

Plaintiff anticipates modifying the proposed class definition—including proposing subclasses if appropriate—after discovery about the scope of Defendant's fax advertising practices as well as discovery as to any potential affirmative defenses Defendant may plead.

20.    Excluded from the class are Defendant, any entity in which Defendant have a controlling interest, Defendant's employees, officers, and directors, Defendant's legal representatives, heirs, successors, and assigns, and any Judge assigned to this action, and his or her family.

21.    On information and belief, Defendant's fax advertising campaigns involved other, substantially-similar advertisements also sent without the opt-out notice required by the TCPA. Plaintiff intends to locate those advertisements in discovery. Exhibit B, a Demand for Preservation of All Tangible Documents Including Electronically Stored Information.

22.    This action is brought, and may properly be maintained as, a class action under 735 ILCS 5/2-801. This action satisfies the class action prerequisites because the class is too numerous for individual joinder, common questions of law or fact predominate over individual questions, the representative parties and their attorneys will fairly and adequately protect the interests of the entire class, and this class action is an appropriate method for the fair and efficient adjudication of the controversy.

23.    **Numerosity/Impracticality of Joinder:**  On information and belief, the class includes more than thirty-nine persons and, thus, is so numerous that joinder of all members is impracticable. The precise number of class members and their

FILED DATE: 4/13/2020 3:49 PM    2020CH03822

identities are unknown to Plaintiff, but can be obtained from Defendant's records or the records of third parties.

24.    **Questions of Law or Fact Common to the Class:** There is a well-defined community of interest and common questions of law and fact that predominate over any questions affecting only individual members of the class. These common legal and factual questions, which do not vary from one class member to another, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to the following:

a.    Whether Defendant sent unsolicited advertisements by fax;

b.    Whether Defendant's faxes advertised the commercial availability or quality of any property, goods, or services;

c.    The manner and method Defendant used to compile or obtain the list(s) of fax numbers to which they sent advertisements by fax;

d.    Whether Defendant faxed advertisements without first obtaining the recipients' express permission or invitation;

e.    Whether Defendant included clear and conspicuous opt-out notices on its faxed advertisements, including all content the TCPA requires;

f.    Whether Defendant is directly or vicariously liable for violating the TCPA;

g.    Whether Plaintiff and the other class members are entitled to statutory damages;

FILED DATE: 4/13/2020 3:49 PM   2020CH03822

h.   Whether Defendant should be enjoined from faxing advertisements in the future;

i.   Whether the Court should award trebled damages; and

j.   Whether Defendant's conduct constituted common law conversion.

25.   **Fair and Adequate Representation**: Plaintiff will fairly and adequately protect the interests of the class. Plaintiff does not have any interests adverse to the class. Plaintiff has retained counsel who are experienced in class action litigation generally and the TCPA specifically.

26.   **Appropriateness**: A class action is an appropriate method for the fair and efficient resolution of this controversy. Plaintiff envisions no difficulty in the management of this case as a class action.

## COUNT I
## TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

27.   Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

28.   Plaintiff brings Count I on behalf of itself and a class of similarly-situated persons.

29.   The TCPA prohibits the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine…." 47 U.S.C. § 227 (b) (1).

30.   The TCPA defines "unsolicited advertisement," as "any material advertising the commercial availability or quality of any property, goods, or services

FILED DATE: 4/13/2020 3:49 PM    2020CH03822

which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227 (a) (4).

31.    The TCPA provides:

3.    Private right of action.    A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:

(A)    An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B)    An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C)    Both such actions.

47 U.S.C. § 227 (b) (3).

32.    In relevant part, the TCPA states that "[t]he [Federal Communications] Commission shall prescribe regulations to implement the requirements of this subsection . . . in implementing the requirements of this subsection, the Commission shall provide that a notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if . . . (i) the notice is clear and conspicuous . . ." 47 U.S.C. § 227 (b) (2) (D) (i).

33.    Additionally, "a notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if . . . (ii) the notice states that the recipient may make a request to the sender of the unsolicited advertisement not to send any future unsolicited advertisements to a telephone facsimile machine or machines and that failure to comply, within the shortest

FILED DATE: 4/13/2020 3:49 PM   2020CH03822

reasonable time, as determined by the Commission, with such a request meeting the requirements under subparagraph (E) is unlawful . . ." 47 U.S.C. § 227 (b) (2) (D) (ii). The shortest reasonable time has been determined to be thirty (30) days. 47 C.F.R. § 64.1200 (a) (4) (iii) (B).

34.     The opt-out notice must also include "a domestic contact telephone and facsimile number for the recipient to transmit such a request to the sender" as well as a "cost-free mechanism for a recipient to transmit a request pursuant to such notice . . ." 47 U.S.C. § 227 (b) (2) (D) (iv).

35.     "A notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if . . . (v) the telephone and facsimile machine numbers and the cost-free mechanism . . . permit an individual or business to make such a request at any time on any day of the week." 47 U.S.C. § 227 (b) (2) (D) (v).

36.     The FCC's regulations of opt-out notices on facsimile advertisements are set forth at 47 C.F.R. § 64.1200 (a) (4) (iii)

37.     The Court, in its discretion, can treble the statutory damages if the violation was knowing or willful. 47 U.S.C. § 227.

38.     Defendant violated 47 U.S.C. § 227 *et seq.* by sending advertisements by fax to Plaintiff and the other class members without their prior express invitation or permission and, to the extent Defendant will contend they sent the facsimiles on the basis of "established business relationship," by failing to include the clear,

conspicuous, and content-rich opt-out notice required on the first page of each such facsimile.

39.    Facsimile advertising imposes burdens on unwilling recipients that are distinct from those imposed by other types of advertising. The content of the required opt-out notice is designed to ensure that the recipients know how to prevent and avoid future fax transmissions of advertising material, and to provide the various cost-free means Congress required to be made available to do so. If senders do not clearly and conspicuously provide the opt-out content to the recipients, then the recipients are unable to stop the burdens imposed by this form of advertisement.

40.    The TCPA is a strict liability statute and Defendant is liable to Plaintiff and the other class members even if its actions were negligent.

41.    Defendant is liable because it sent the faxes, caused the faxes to be sent, participated in the activity giving rise to and/or constituting the violation, the faxes were sent on its behalf, or under general principles of vicarious liability applicable under the TCPA, including actual authority, apparent authority and ratification.

42.    Defendant knew or should have known that Plaintiff and the other class members had not given express invitation or permission for Defendant or anybody else to send them advertisements by facsimile and that the faxes did not display the opt-out notices required by the TCPA (including the FCC's regulations).

43.    Defendant's actions caused damages to Plaintiff and the other class members. Receiving Defendant's junk faxes caused recipients to lose paper and toner consumed in the printing of Defendant's faxes. Moreover, the subject faxes used

10

FILED DATE: 4/13/2020 3:49 PM    2020CH03822

FILED DATE: 4/13/2020 3:49 PM    2020CH03822

Plaintiff's and the class's fax machines. The subject faxes cost Plaintiff time, as Plaintiff's valuable time was wasted receiving and reviewing Defendant's illegal faxes, time that otherwise would have been spent on Plaintiff's business activities. Defendant's faxes unlawfully interrupted Plaintiff's and the other class members' privacy interests in being left alone. Finally, the injury and property damage sustained by Plaintiff and the other class members from the sending of the faxes occurred outside Defendant's premises.

44.    Even if Defendant did not intend to cause damage to Plaintiff and the other class members, did not intend to violate their privacy, and did not intend to waste the recipients' valuable time with Defendant's advertisements, those facts are irrelevant because the TCPA is a strict liability statute.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly-situated, demands judgment in its favor and against Defendant, jointly and severally as follows:

A.    That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.    That the Court award $500.00 in statutory damages for each violation of the TCPA;

C.    That the Court treble the statutory damages to $1,500 per violation if it finds that either Defendant's conduct was knowing or willful;

11

FILED DATE: 4/13/2020 3:49 PM    2020CH03822

D.    That the Court enter an injunction prohibiting Defendant from sending advertisements by fax without first demonstrating that it first obtains express invitation or permission to fax advertisements or that it includes the required opt-out notice on each advertisement sent by fax to a person with whom Defendant has an established business relationship; and

E.    That the Court award costs and such further relief as the Court may deem just and proper.

## COUNT II
## CONVERSION

45.    Plaintiff incorporates all paragraphs preceding Count I as though fully set forth herein.

46.    Plaintiff brings Count II on behalf of itself and a class of similarly-situated persons and alleging claims under the common law of conversion.

47.    By sending unsolicited faxes to Plaintiff and the other class members, Defendant improperly and unlawfully converted their fax machines, toner and paper to Defendant's own use.  Defendant also converted the recipients' time to its own marketing use.

48.    Immediately prior to the sending of the unsolicited faxes, Plaintiff and the other class members owned an unqualified and immediate right to possession of their fax machines, paper, toner, and employee time.

49.    By sending the unsolicited faxes, Defendant permanently misappropriated the class members' fax machines, toner, paper, and employee time to its own use. Such misappropriation was wrongful and without authorization.

12

FILED DATE: 4/13/2020 3:49 PM    2020CH03822

50.     Defendant knew or should have known that its misappropriation of paper, toner, and employee time was wrongful and without authorization.

51.     Plaintiff and the other class members were deprived of the use of the fax machines, paper, toner, and employee time, which could no longer be used for any other purpose. Plaintiff and each class member thereby suffered damages as a result of their receipt of unsolicited fax advertisements from Defendant.

52.     Each of Defendant's unsolicited faxes that Plaintiff received effectively stole Plaintiff's time by forcing one or more employees to receive, review, and act upon Defendant's illegal faxes. Just the time spent in retrieving an unsolicited facsimile from the fax machine, reviewing it, and tossing it in the garbage can is burdensome and wasteful and converts Plaintiff's valuable time to Defendant's marketing effort. Defendant knew or should have known business time is valuable to Plaintiff and the other class members.

WHEREFORE, Plaintiff demands judgment in favor of itself and the entire class of similarly-situated others and against Defendant as follows:

A.     That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.     That the Court award appropriate damages;

C.     That the Court award punitive damages.

D.     That the Court award reasonable attorney's fees;

E.     That the Court award costs of suit; and

13

F.    That the Court award such further relief as it may deem just and proper.

Respectfully submitted,

AMBASSADOR ANIMAL HOSPITAL, LTD., individually and as the representative of a class of similarly-situated persons,

By: /s/ Phillip A. Bock
        One of its attorneys

Phillip A. Bock (ARDC #6224502)
BOCK, HATCH, LEWIS & OPPENHEIM, LLC (#44533)
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
Telephone: 312-658-5500
Facsimile: 312-658-5555
Email: service@classlawyers.com

FILED DATE: 4/13/2020 3:49 PM  2020CH03822

14

FILED
4/13/2020 3:49 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020CH03822

FILED DATE: 4/13/2020 3:49 PM   2020CH03822

# EXHIBIT A

RECEIVED 03/28/2018 09:53AM 16308309629   AMBASSADOR AH
03-28-2018 8:55   866-486-9741   AMBASSADOR AN HOSP HANOVER P   1/1

FILED DATE: 4/13/2020 3:49 PM 2020CH03822

# NEW COUPON PAD for Hill's® PRESCRIPTION DIET® is on its way!

**Dear Veterinary Health Care Team,**

We want to be part of your effort in providing the best care and support for your **NEW Prescription Diet°** patients. In the ***first week of April***, please look for your ***Hill's° Envelope***, which includes:

1. Coupon pad
2. A letter with coupon usage instructions



Hill's° Envelope You
WIll Receive



Coupon Pad (10 Sheets)

If you have any questions, please contact your Hill's Representative.
Or call our Veterinary Consultation Service (VCS) at 1-800-548-VETS (8387).

**Enjoy!**

*Your Friends at Hill's Pet Nutrition*

To be removed from our distribution list, please call 1-866-486-9741

RECEIVED 05/14/2018 02:36PM 16308389629 AMBASSADOR AH
05-14-2018 13:37 800-442-9910 AMBASSADOR AN HOSP HANOVER P 1/1

FILED DATE: 4/13/2020 3:49 PM 2020CH03822



# Buy 1 Case of Hill's® Prescription Diet®
# Dental Care Chews
## Get 1 FREE Merchandiser!





Buy 1 Case
(6 bags)

Get 1 Free Merchandiser

**Only valid 05/14/18 – 06/04/18**
**1 order /clinic, 1 min – 5 max free merchandisers**

| SKU | Product Description | Size | DVM List Price | Order Quantity | Total Cost | Unit MSRP* |
|---|---|---|---|---|---|---|
| 10895 | Prescription Diet® Canine Dental Care Chews Treats **Small Size** | 6 * 12 oz | $75.96 | | | $18.99 |
| 10894 | Prescription Diet® Canine Dental Care Chews Treats **Regular Size** | 6 * 12 oz | $75.96 | | | $18.99 |
| | | | **Total** | | | |

### Get Your Free Merchandisers
(5 max free merchandisers)

| 10896 | Prescription Diet® Canine Dental Care Chews Treats **Regular Singles** | 35 * .99 oz | $44.10 | | | $1.89 |
|---|---|---|---|---|---|---|

## TO PLACE YOUR ORDER:

**Fax: 1-800-442-9910**     Email: customerservice@hillspet.com     **Call: 1-800-354-4557**

Customer Name: _____     Sold To: _____
Address: _____     Ship To: _____
City, State, Zip: _____     Order Date: _____

To be removed from our distribution list, please call 1-866-486-9741

For more information on Hill's® Prescription Diet®, visit HillsVet.com, call Customer Service at 1-800-354-4557 or contact your Hill's Representative. Order fulfillment based on product availability and is not subject to substitution. Hill's reserves the Hill's reserves the right to cancel the promotion at any time. ©2018 Hill's Pet Nutrition, Inc. ®/™ Hill's Pet Nutrition, Inc.® The Unit MSRP's listed in this document are recommendations only and there is no obligation on the retailer to comply with these recommendations.

FILED
4/13/2020 3:49 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020CH03822
9067743

FILED DATE: 4/13/2020 3:49 PM   2020CH03822

# EXHIBIT B

# BOCK, HATCH, LEWIS & OPPENHEIM, LLC

134 North La Salle Street, Suite 1000

Chicago, IL 60602

312-658-5500 (Phone) • 312-658-5555 (Fax)

April 13, 2020

**VIA PROCESS SERVER**

Hill's Pet Nutrition, Inc.
c/o The Corporation Trust Company
Corporation Trust Center
1209 Orange Street
Wilmington, DE 19601

Re: **Demand for Preservation of Tangible Documents and Electronically Stored Information in *Ambassador Animal Hospital, Ltd. v. Hill's Pet Nutrition, Inc.***

Dear sir or madame:

We represent Ambassador Animal Hospital, Ltd. ("Plaintiff") in the above mentioned case. Plaintiff alleges that Hill's Pet Nutrition, Inc. ("Defendant" or "you") sent unsolicited advertisements by fax in violation of the TCPA.

We consider electronic data to be a valuable and irreplaceable source of discovery and evidence in this matter. The laws and rules prohibiting the destruction of evidence apply to electronic data with the same force as they apply to other kinds of evidence.

Plaintiff hereby demands that you preserve all documents, tangible things and electronically stored information potentially relevant to the issues in this cause. As used in this document, "you" and "your" refers to Hill's Pet Nutrition, Inc., its predecessors, successors, parents, subsidiaries, divisions or affiliates, and their respective officers, directors, agents, attorneys, accountants, employees, partners or other persons occupying similar positions or performing similar functions. "Third parties," as used in this document, refer to anyone taking action on behalf of either Defendant and any employees or agents thereof.

FILED DATE: 4/13/2020 3:49 PM 2020CH03822

FILED DATE: 4/13/2020 3:49 PM   2020CH03822

Hill's Pet Nutrition, Inc.
April 13, 2020
Page 2 of 8

You should anticipate that much of the information subject to disclosure or responsive to discovery in this matter is stored on your current and former computer systems and other media and devices (including personal digital assistants, voice-messaging systems, online repositories and cell phones).

Electronically stored information ("ESI") should be afforded the broadest possible definition and includes (by way of example and not as an exclusive list) potentially relevant information electronically, magnetically or optically stored as:

- Image and facsimile files (*e.g.*, .pdf, .tiff, .jpg, .gif images);
- Digital communications (*e.g.*, e-mail, voicemail, instant messaging, text messages, and all social media content);
- Word processed documents and drafts (*e.g.*, using Word or WordPerfect or any other word processing system);
- Spreadsheets and tables (*e.g.*, Excel, Lotus 123, or any other computer-generated worksheets);
- Network access and server activity logs;
- Databases (*e.g.*, Access, Oracle, SQL Server data, SAP);
- Contact and Relationship Management Data (*e.g.*, Outlook, Salesforce, ACT!);
- Calendar and Diary Application Data (*e.g.*, Outlook, Yahoo, Google, blog tools);
- Online Access Data (*e.g.*, temporary internet files, history, cookies);
- Presentations (*e.g.*, PowerPoint, Corel Presentations)
- Project management application data; and
- Back up and archival files (*e.g.*, Zip, .GHO).

ESI also includes information or data stored on proprietary software, databases or systems.

ESI resides not only in areas of electronic, magnetic and optical storage media reasonably accessible to you, but also in areas you may deem not reasonably accessible. You are obliged to preserve potentially relevant evidence from both these sources of ESI, even if you do not anticipate producing such ESI.

The demand that you preserve both accessible and inaccessible ESI is reasonable and necessary. Pursuant to amendments to the Federal Rules of Civil Procedure that have been approved by the United States Supreme Court (*eff.* 12/1/05), you must identify all sources of ESI you decline to produce and demonstrate to the court why such sources are not reasonably accessible. For good cause shown, the court may then order production of the ESI, even if it finds that it is not reasonably accessible. Accordingly, even ESI that you deem reasonably

FILED DATE: 4/13/2020 3:49 PM   2020CH03822

Hill's Pet Nutrition, Inc.
April 13, 2020
Page 3 of 8

inaccessible must be preserved in the interim so as not to deprive the Plaintiff of its right to secure the evidence or the Court of its right to adjudicate the issue.

### A.   Preservation Requires Immediate Intervention

You must act immediately to preserve potentially relevant ESI including, without limitation, information with the earlier of a Created or Last Modified date on or after January 1, 2015 through the date of this demand and concerning:

    a. All electronic mail ("e-mail") and information about e-mail (including message contents, header information, and logs of e-mail systems usage) sent or received by Defendant, third parties, or anyone relating to Defendant or third parties;

    b. All other e-mail and information about e-mail (including message contents, header information, and logs of e-mail systems usage) containing information about Defendant or third parties or work performed for Defendant or third parties;

    c. All databases (including all records and field structural information in such databases) containing any reference to and/or information about Defendant or Defendant's intended fax recipients, or third parties or third-parties' intended fax recipients;

    d. All logs of faxing activity (including all reports indicating success or failure of attempted transmission) containing information about Defendant and/or Defendant's intended fax recipients, or third parties or third parties' intended fax recipients;

    e. All word processing files and file fragments containing information about Defendant or third parties;

    f. All electronic data files and file fragments created by application programs that process financial, accounting, and billing information related to Defendant or third parties;

    g. All files and file fragments containing information from electronic calendars and scheduling programs regarding Defendant and/or fax transmissions sent on behalf of Defendant, or third parties and/or fax transmissions sent on behalf of third parties;

    h. All electronic data files and file fragments created or used via electronic spreadsheet programs where such data files contain information about Defendant and/or Defendant's intended fax recipients, or third parties and/or third parties' intended fax

Hill's Pet Nutrition, Inc.
April 13, 2020
Page 4 of 8

FILED DATE: 4/13/2020 3:49 PM  2020CH03822

recipients; including files and file fragments created by Defendant or third parties;

i.  All other electronic data containing information about Defendant or third parties; and

j.  All e-mail from third party sources that may contain references or correspondence relating to Defendant or third parties.

Adequate preservation of ESI requires more than simply refraining from efforts to destroy or dispose of such evidence. You must also intervene to prevent loss due to routine operations and employ proper techniques and protocols suited to protection of ESI. Be advised that sources of ESI are altered and erased by continued use of your computers and other devices. Booting a drive, examining its contents or running any application will irretrievably alter the evidence it contains and may constitute unlawful spoliation of evidence. Consequently, alteration and erasure may result from your failure to act diligently and responsibly to prevent loss or corruption of ESI. Nothing in this demand for preservation of ESI should be understood to diminish your concurrent obligation to preserve document, tangible things and other potentially relevant evidence.

### B.  Suspension of Routine Destruction

You are directed to immediately initiate a litigation hold for potentially relevant ESI, documents and tangible things, and to act diligently and in good faith to secure and audit compliance with such litigation hold. You are further directed to immediately identify and modify or suspend features of your information systems and devices that, in routine operation, operate to cause the loss of potentially relevant ESI. Examples of such features and operations include:

- Purging the contents of e-mail repositories by age, capacity or other criteria;
- Using data or media wiping, disposal, erasure or encryption utilities or devices;
- Overwriting, erasing, destroying or discarding back up media;
- Re-assigning, re-imaging or disposing of systems, servers, devices or media;
- Running antivirus or other programs effecting wholesale metadata alteration;
- Releasing or purging online storage repositories;
- Using metadata stripper utilities;
- Disabling server or IM logging; and,
- Executing drive or file defragmentation or compression programs.

FILED DATE: 4/13/2020 3:49 PM   2020CH03822

Hill's Pet Nutrition, Inc.
April 13, 2020
Page 5 of 8

### C.   Preservation by Imaging

You should take affirmative steps to prevent anyone with access to your data, systems and archives from seeking to modify, destroy or hide electronic evidence on network or local hard drives (such as by deleting or overwriting files, using data shredding and overwriting applications, defragmentation, re-imaging or replacing drives, encryption, compression, steganography or the like). With respect to local hard drives, one way to protect existing data on local hard drives is by the creation and authentication of a forensically qualified image of all sectors of the drive. Such a forensically qualified duplicate may also be called a bitstream image or clone of the drive. Be advised that a conventional back up of a hard drive is not a forensically qualified image because it only captures active, unlocked data files and fails to preserve forensically significant data that may exist in such areas as unallocated space, slack space and the swap file.

With respect to the hard drives and storage devices maintained offsite, including Cloud Based Data Storage, including any File Transfer Protocol Host Account or Server Storage, whether provided by a server owned or maintained by your subsidiaries, agents, and/or contractors, maintained by a company on behalf of you or shared by you and Defendant or any third parties, demand is made that you preserve the ESI on those devices.

With regard to all data storage for Defendant or any employee, subsidiary, contractor, or agent, stop any activity which my result in the loss of such electronic data, including the rotation, destruction, overwriting, and/or erasure of such media in whole or in part, unless a true and correct copy of each such electronic file has been made and steps have been taken to assure that such copy will be preserved and accessible for purposes of this litigation

### D.   Preservation in Native Form

You should anticipate that certain ESI, including but not limited to spreadsheets and databases, will be sought in the form or forms in which it is ordinarily maintained. Accordingly, you should preserve ESI in such native forms, and you should not select methods to preserve ESI that remove or degrade the ability to search your ESI by electronic means or make it difficult or burdensome to access or use the information efficiently in the litigation. You should additionally refrain from actions that shift ESI from reasonably accessible media and forms to less accessible media and forms if the effect of such actions is to make such ESI not reasonably accessible.

FILED DATE: 4/13/2020 3:49 PM  2020CH03822

Hill's Pet Nutrition, Inc.
April 13, 2020
Page 6 of 8

### E.  Metadata

You should further anticipate the need to disclose and produce system and application metadata and act to preserve it. System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location and dates of creation and last modification or access. Application metadata is information automatically included or embedded in electronic files but which may not be apparent to a user, including deleted content, draft language, commentary, collaboration and distribution data and dates of creation and printing. Be advised that metadata may be overwritten or corrupted by careless handling or improper steps to preserve ESI. For e-mail, metadata includes all header routing data and Base 64 encoded attachment data, in addition to the To, From, Subject, Received Date, CC and BCC fields.

### F.  Servers

With respect to servers like those used to manage e-mail (e.g., Microsoft Exchange, Lotus Domino) or network storage (often called a user's "network share"), the complete contents of each user's network share and e-mail account should be preserved. There are several ways to preserve the contents of a server depending upon, e.g., its RAID configuration and whether it can be downed or must be online 24/7. Please call to discuss the sufficiency of preservation methods if you have questions.

### G.  Ancillary Preservation

You must preserve documents and other tangible items that may be required to access, interpret or search potentially relevant ESI, including programs, utilities, logs, control sheets, specifications, indices, naming protocols, file lists, network diagrams, flow charts, instruction sheets, data entry forms, abbreviation keys, user ID and password rosters, legacy or proprietary devices, or the like.

### H.  Paper Preservation of ESI is Inadequate

As hard copies do not preserve electronic searchability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions. If information exists in both electronic and paper forms, you should preserve both forms.

Hill's Pet Nutrition, Inc.
April 13, 2020
Page 7 of 8

FILED DATE: 4/13/2020 3:49 PM    2020CH03822

## I.      Agents, Attorneys and Third Parties

Your preservation obligation extends beyond ESI in your care, possession or custody and includes ESI in the custody of others that is subject to your direction or control. Accordingly, you must notify any current or former agent, attorney, employee, custodian or contractor in possession of potentially relevant ESI to preserve such ESI to the full extent of your obligation to do so, and you must take reasonable steps to secure their compliance.

## J.      Preservation Protocols

We desire to work with you to agree upon an acceptable protocol for forensically sound preservation and can supply a suitable protocol, if you will furnish an inventory of the systems and media to be preserved. Else, if you will promptly disclose the preservation protocol you intend to employ, perhaps we can identify any points of disagreement and resolve them. A successful and compliant ESI preservation effort requires expertise. If you do not currently have such expertise at your disposal, we urge you to engage the services of an expert in electronic evidence and computer forensics. Perhaps our respective expert(s) can work cooperatively to secure a balance between evidence preservation and burden that's fair to both sides and acceptable to the Court.

## K.      Do Not Delay Preservation

I am available to discuss reasonable preservation steps; however, you should not defer preservation steps pending such discussions if ESI may be lost or corrupted as a consequence of delay. Should your failure to preserve potentially relevant evidence result in the corruption, loss or delay in production of evidence to which we are entitled, such failure would constitute spoliation of evidence, and we will not hesitate to seek sanctions.

Hill's Pet Nutrition, Inc.
April 13, 2020
Page 8 of 8

FILED DATE: 4/13/2020 3:49 PM   2020CH03822

### L.  Confirmation of Compliance

Please confirm that you have taken the steps outlined in this letter to preserve ESI and tangible documents potentially relevant to this action. If you have not undertaken the steps outlined above, or have taken other actions, please describe what you have done to preserve potentially relevant evidence.

Respectfully,

/s/ Phillip A. Bock

Phillip A. Bock
BOCK, HATCH, LEWIS & OPPENHEIM, LLC
134 N. LaSalle St., Suite 1000
Chicago, IL 60602
(312)658-5500
phil@classlawyers.com

Return Date: No return date scheduled
Hearing Date: 8/11/2020 10:30 AM - 10:30 AM
Courtroom Number: 2102
Location: District 1 Court
    Cook County, IL

FILED
4/13/2020 7:53 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020CH03822

9069135

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS,
COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| AMBASSADOR ANIMAL HOSPITAL, LTD., individually and as the representative of a class of similarly-situated persons, | ) ) ) |
| | ) |
| Plaintiff, | ) |
| | )    No. 2020 CH 03822 |
| v. | ) |
| | ) |
| HILL'S PET NUTRITION, INC, | ) |
| | ) |
| Defendant. | ) |

FILED DATE: 4/13/2020 7:53 PM   2020CH03822

## <u>MOTION FOR CLASS CERTIFICATION</u>

Plaintiff, Ambassador Animal Hospital, Ltd., on behalf of itself and all others

similarly situated, respectfully moves the Court pursuant to 735 ILCS 5/2-801, *et*

*seq.,* to certify a class in this case, offering the following in support thereof:

      1.      Plaintiff proposes the following class definition:

> All persons sent at least one telephone facsimile message (a "fax"): (1) on or after April 13, 2016; (2) from or on behalf of Hill's; (3) advertising property, goods, or services of Hill's; (4) without the fax recipient's prior express invitation or permission; and (5) without the clear and conspicuous opt-out notice required by 47 C.F.R. § 64.1200 (a) (4) (iii).

Excluded from the proposed class are Defendant, any entity in which Defendant has

a controlling interest, Defendant's employees, officers, and directors, Defendant's

legal representatives, heirs, successors, and assigns, and any Judge assigned to this

action, and his or her family.

      2.     The class defined above is so numerous that joinder of all members is

impracticable. 735 ILCS 5/2-801(1). A class action is appropriate when joinder is

economically impracticable for both the litigants and the court. 735 ILCS 5/2-801(1);

FILED DATE: 4/13/2020 7:53 PM   2020CH03822

*see also Steinberg v. Chicago Med. Sch.*, 69 Ill. 2d 320 (1977). When there is a large number of potential claimants, and the individual amount of each claim is relatively small, Illinois courts are particularly receptive to a class action. *See Miner v. Gillette Co.*, 87 Ill. 2d 7 (1981). Although there is no "magic number" that always establishes whether a class is so numerous that individual joinder would be impracticable, 40 is typically treated as the threshold above which numerosity is presumed. *See Wood River Area Devel. Corp. v. Germania Fed. Savings and Loan Assoc.*, 198 Ill. App. 3d 445, 450 (5th Dist. 1990) ("Our research has supported this guideline."). Class-related discovery will provide the Court with the necessary details, but on information and belief the class in this case exceeds 40 members.

3.   There are questions of fact or law common to the class, which predominate over any question affecting only individual members. 735 ILCS 5/2-801 (2). The case involves common fact questions about Defendant's practice of sending advertisements by facsimile and common legal questions under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA"), such as:

a.   Whether Defendant sent unsolicited advertisements by fax;

b.   Whether Defendant's faxes advertised the commercial availability or quality of any property, goods, or services;

c.   The manner and method Defendant used to compile or obtain the list(s) of fax numbers to which they sent advertisements by fax;

d.   Whether Defendant faxed advertisements without first obtaining the recipients' express permission or invitation;

2

FILED DATE: 4/13/2020 7:53 PM  2020CH03822

e.      Whether Defendant included clear and conspicuous opt-out notices on its faxed advertisements, including all content the TCPA requires;

f.      Whether Defendant is directly or vicariously liable for violating the TCPA;

g.      Whether Plaintiff and the other class members are entitled to statutory damages;

h.      Whether Defendant should be enjoined from faxing advertisements in the future;

i.      Whether the Court should award trebled damages; and

j.      Whether Defendant's conduct constituted common law conversion.

4.      In *P.J.'s Concrete Pumping Serv.*, 345 Ill. App. 3d 992, 1003 (2d Dist. 2004), the Appellate Court explained why certification is especially appropriate in a case involving uniform misconduct:

> The primary factual issue in this case is a uniform billing practice that allegedly violated the Consumer Fraud Act in the same manner as to all class members. The propriety of such a uniform practice is amenable to being resolved in a class action. Once the trial court finds that a predominating question of fact or law exists, the presence of individual questions does not necessarily defeat class certification.

*Id., citing Kennedy v. Commercial Carriers, Inc.*, 294 Ill. App. 3d 34, 39 (1st Dist. 1997). Similarly, this case will focus squarely on Defendant's fax advertising campaigns.

5.      Plaintiff and its counsel will adequately protect the interests of the class. 735 ILCS 5/2-801 (3). The adequate representation requirement is designed

FILED DATE: 4/13/2020 7:53 PM 2020CH03822

to ensure that all class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claims. *See Gordon v. Boden*, 224 Ill. App. 3d 195, 203 (1st Dist. 1991). The adequacy of representation requirement is satisfied if Plaintiff's counsel are qualified, experienced, and generally able to conduct the proposed litigation and there are no antagonistic interests between the representative party and the class. *See Carillo* v. *Jam Productions, Ltd.,* 108 Ill. App. 3d 126 (1st Dist. 1982). Plaintiff has retained counsel experienced in class actions generally and the TCPA specifically.

6. This class action is an appropriate method for the fair and efficient adjudication of the controversy. 735 ILCS 5/2-801 (4). Section 5/2-801 (4) requires that the "class action is an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2-801(4). When the first three statutory criteria are met, this "manifest[s] that the final requirement of the statute is fulfilled." *Steinberg,* 69 Ill. 2d at 339. *See also Barliant* v. *Follett Corp.,* 74 Ill. 2d 226, 239-40 (1978). As demonstrated above, the first three criteria are met in this action.

7. Moreover, when determining whether a class action is appropriate, courts often consider whether the class action device can best secure economies of time, effort and expenses and promote uniformity of decision or accomplish other ends of equity and justice in the case under consideration. *See, e.g., Gordon*, 224 Ill. App. 3d at 203. Here, the individual class members suffered damages that, while cognizable, are small in terms of their dollar value. Given the small amount of money at issue for each class member and the fact that proof of the class's claims

FILED DATE: 4/13/2020 7:53 PM   2020CH03822

will involve the same central issues, this single case—rather than hundreds of individual cases—offers the best (and perhaps only) means for litigating these claims against Defendant.

WHEREFORE, Plaintiff prays that this Court enter an order pursuant to 735 ILCS 5/2-801 certifying the class, appointing Plaintiff as the class representative, and appointing Plaintiff's attorneys as class counsel.

Respectfully submitted,

AMBASSADOR ANIMAL HOSPITAL, LTD., individually and as the representative of a class of similarly-situated persons,

By: /s/ Phillip A. Bock
    One of its attorneys

Phillip A. Bock (ARDC #6224502)
BOCK, HATCH, LEWIS & OPPENHEIM, LLC (#44533)
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
Telephone: 312-658-5500
Facsimile: 312-658-5555
service@classlawyers.com


## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing Motion for Class Certification to be served on each Defendant with the Summons and Class Action Complaint.

/s/ Phillip A. Bock

Return Date: No return date scheduled
Hearing Date: 8/11/2020 10:30 AM - 10:30 AM
Courtroom Number: 2102
Location: District 1 Court
      Cook County, IL

FILED
4/23/2020 1:59 PM
DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2020CH03822

9130745

FILED DATE: 4/23/2020 1:59 PM 2020CH03822

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

|  |  |  |
|---|---|---|
| AMBASSADOR ANIMAL HOSPITAL, LTD., individually and as the representative of a class of similarly-situated persons, | ) ) ) ) ) | |
| Plaintiff, | ) | **No. 20 CH 03822** |
| v. | ) ) | **CLASS ACTION** |
| HILL'S PET NUTRITION, INC., | ) ) | |
| Defendant. | ) | |

## NOTICE OF MOTION

On **July 6, 2020, at 10:30 a.m.**, or as soon thereafter as counsel may be heard, I shall appear before the Honorable Judge David B. Atkins, or any Judge sitting in his stead, in Courtroom 2102 of the Richard J. Daley Center, 50 W. Washington Street, Chicago, Illinois, and then and there present *Plaintiff's Motion for Class Certification*

/s/ Phillip A. Bock
One of Plaintiff's Attorneys

Phillip A. Bock (ARDC #6224502)
Bock, Hatch, Lewis & Oppenheim LLC
134 N. La Salle Street, Suite 1000
Chicago, IL 60602
Telephone: 312-658-5500
Email: service@classlawyers.com

FILED DATE: 4/23/2020 1:59 PM   2020CH03822

## CERTIFICATE OF SERVICE

     I hereby certify that I caused a true and correct copy of the foregoing Notice of Motion for Class Certification to be served on each Defendant with the Summons, Class Action Complaint, and Motion for Class Certification.

                          /s/ Phillip A. Bock
                          One of Plaintiff's Attorneys

2